Goodman *v.* White.

<hr />

WALTER GOODMAN *vs.* FRANCIS M. WHITE.

Where a member of a copartnership firm is sought to be held responsible for an act or undertaking of another copartner, for a transaction out of their original firm business, it must be proven that the partner thus sought to be made liable had knowledge of the transaction; and assented to it.

· If the receipt of the money charged was a matter transacted by the firm for compensation, their books ought to show it, as it would be part of the profits of the establishment.

IN error from the circuit court of Marshall county ; Hon. Hugh R. Miller, judge.

On the 25th of June, 1849, White·sued Goodman, in the circuit court of Marshall county, as a member of the firm of Goodman & Means, upon the following open account: —

"June 1, 1847.
"Messrs. GOODMAN & MEANS,
       To Francis M. White,         Dr.
For $360 in Farmers and Merchants Bank notes, handed you by U. J. Bullock, worth             $250."

The declaration contained the usual common counts in assumpsit, and the general issue of non-assumpsit was joined between the parties.

Two witnesses only, U. J. Bullock and William Hull, were examined by the plaintiff in the court below, upon the trial.

Bullock testified, that about June, 1847, he deposited with Goodman & Means, of Memphis, Tennessee, $360 in Farmers and Merchants Bank bills, to be by them sold, or not, as they might deem best, for Francis M. White, the proceeds of the sale to be placed to his (White's) credit; that the witness had been in the habit of transacting business for White and himself, with the firm of Goodman & Means; and that he was offered sixty cents in the dollar for the Farmers and Merchants Bank notes in June, 1847.

On his cross-examination, Bullock stated, that Goodman & Means did a warehouse and commission, and receiving and forwarding business. He did not know that they were brokers. The Farmers and Merchants Bank notes, of which the witness had spoken, were left by him with Mr. Means. Mr. Goodman was not present at the time, and was not aware, so far as the witness knew, that the bank notes had been left with Means.

Hull testified, that in June, 1847, he sent $100 in a letter, addressed to Goodman & Means, Memphis, and requested them to buy him silver with it, which they did, and returned him the amount purchased, and charged him a commission of two and a half per cent. for buying the specie. This was done in the name of Goodman & Means; but the witness did not know whether Goodman had any knowledge of the transaction or not.

This was all the testimony on the part of White in support of his case.

George E. Goodman was examined on the part of the defendant below. He testified, that the business in which the firm of Goodman & Means was engaged, at Memphis, was that of grocery and commission merchants, and that the purchase or sale of uncurrent money, on commission, was not one of the branches of their business.

The witness further testified, that, in May and June, 1847, he was in the employment of Goodman & Means, as their book-keeper, they being then in liquidation; and that, about that time, there was a package of Farmers and Merchants Bank notes, marked " F. M. White," in a pocket-book used by Goodman & Means; but no entry of it was made on the books; and in the summer of 1847, H. H. Means used those bank notes in paying a private debt which he owed to the Farmers and Merchants Bank; that Walter Goodman, the defendant below, resided at Holly Springs in 1847, and did not give his personal attention to the business of Goodman & Means, and could have had no personal knowledge of the details of the business.

Witness further testified, that Goodman & Means did, in a few instances, receive and sell uncurrent money; and did never receive and remit money; but he did not think they ever made any charge.

*Glenn,* for appellant.

It is an established principle, that one partner has not an implied power to bind the firm in any engagements which are unconnected with and foreign to the partnership, and that when a third person deals with one of the partners in a matter not within the scope of the partnership, though that partner himself may be bound, the firm will not be, without affirmative evidence of the consent of the other members. 4 Johns. 251, 280; 10 Wend. 461; 2 Bailey, 109; 3 Ala. 175; 15 Pick. 276, 290.

The act done, also, must be such as is necessarily or usually incident to the business transacted by the firm. In a partnership for the practice of law or medicine, one partner has not authority to borrow money, or draw bills of exchange to raise money, in the name of the firm, such powers being beyond the

scope of the partnership objects. *Crosswhait* v. *Ross*, 1 Humph. 23 ; *Breckenridge* v. *Shrieve*, 4 Dana, 375, 379. Also, see *Crouch* v. *Emerson*, 3 Humph. 209.

These authorities seem to me decisive, and not only show the necessity of a reversal on the facts, but very clearly demonstrate the unsoundness of the charges given for White in the court below. In fact, the charges given by the court *pro* and *con*, make as curious a legal mosaic, " here a piece of white, there a piece of black," as I reckon this court ever before saw.

*W. F. Stearns*, on the same side.

*W. M. Strickland*, for defendant in error, filed no brief.

Mr. Justice FISHER delivered the opinion of the court.

The defendant in error brought an action of assumpsit, in the circuit court of Marshall county, to recover of the plaintiff in error, as a member of the firm of Goodman & Means, who were copartners in a warehouse, commission, receiving, and forwarding business in the city of Memphis, the sum of $250, the value of $360 of the issues of the Farmers and Merchants Bank of Memphis, left with Means, and by him received in the name of the firm, to be sold or converted, at their market value, into par funds.

The defence set up to the action was, that the undertaking of Means, in the name of the firm, was not within the scope and purpose of the copartnership, which was formed for the purpose of conducting the business above named, and not of dealing in uncurrent bank paper; and that the defendant in the action could only be held liable, by assenting to this deviation from the general object of the copartnership by Means.

This view of the law was fully sustained by the court below, as appears from the instructions given to the jury. The question is, therefore, entirely one of fact, whether the verdict of the jury against the plaintiff in error, for the amount claimed, is sustained by the evidence, and on this subject it will be sufficient for us to state in general terms, that the record shows no

evidence whatever, tending to prove either the assent of the plaintiff in error, or a knowledge, on his part, of the transaction. The book-keeper says, that no entry was made on the books of the firm, touching the receipt or disposition of the money left for sale. If, as contended, it had been a matter transacted by the firm for compensation, the books ought certainly to have shown it, as the compensation would have been part of the profits of the concern. But it is unnecessary to consume time on what does not require explanation or argument. There is no testimony on the point.

Judgment reversed, and new trial granted.